# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
# AT BLUEFIELD

**MAHMOOD UL-HASSAN,**

    **Plaintiff,**

**v.**                                                          **CIVIL ACTION NO. 1:16-10996**

**BARBARA RICKARD, Warden,**

    **Defendant.**

## MEMORANDUM OPINION AND ORDER

### I. Introduction

By Standing Order, this action was referred to United States Magistrate Judge Dwane L. Tinsley for submission of proposed findings and recommendation ("PF&R"). Magistrate Judge Tinsley submitted his proposed findings and recommendation on May 7, 2019. In that Proposed Findings and Recommendation, the magistrate judge recommended that this court deny plaintiff's petition for Writ of Habeas Corpus under 28 U.S.C. § 2241 and dismiss this matter from the court's docket.

In accordance with the provisions of 28 U.S.C. § 636(b), the parties were allotted fourteen days, plus three mailing days, in which to file any objections to Magistrate Judge Tinsley's Findings and Recommendation. The failure of any party to file such objections constitutes a waiver of such party's right to a de novo review by this court. Snyder v. Ridenour, 889 F.2d 1363 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140 (1985). Moreover,

this court need not conduct a de novo review when a petitioner "makes general and conclusory objections that do not direct the court to a specific error in the magistrate's proposed findings and recommendations." Orpiano v. Johnson, 687 F.2d 44, 47 (4th Cir. 1982). After obtaining an extension of time to do so, see ECF No. 17, plaintiff filed timely objections to the Proposed Findings and Recommendation on July 29, 2019. The court has conducted a de novo review of the record as to those objections. See 28 U.S.C. § 636(b)(1) ("A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings and recommendations to which objection is made.").

## II. Analysis

On November 17, 2016, plaintiff filed a Petition for Writ of Habeas Corpus by a Person in Federal Custody under 28 U.S.C. § 2241. In that filing, he contends that he was denied due process during prison disciplinary proceedings that resulted in a loss of good time credits, disciplinary segregation, a loss of commissary and telephone privileges, and a fine. Specifically, Ul-Hassan contends that his due process rights were violated because (1) he was not permitted to have his requested staff representative present at his disciplinary hearing; and (2) there was insufficient evidence to demonstrate that he committed the prohibited act.

Magistrate Judge Tinsley recommended that the court dismiss plaintiff's § 2241 because Ul-Hassan was afforded the due process to which he was entitled. See Wolff v. McDonnell, 418 U.S. 539, 563-70 (1974). The magistrate judge further found that plaintiff's due process rights were not violated because he was not actually denied a staff representative. Instead, when plaintiff's requested staff representative was unavailable, Ul-Hassan was offered a continuance of the hearing which he declined. Finally, Magistrate Judge Tinsley concluded that sufficient evidence supported the disciplinary decision.

Ul-Hassan's single objection to the PF&R is to its conclusion that his due process rights were not violated because he was not provided a staff representative. According to Ul-Hassan, he "did not knowingly and intelligently waive his right to a staff representative" as "demonstrated by the absence of a BP-294 signed by Ul-Hassan advising him of the consequences of waiving a staff representative." ECF No. 18 at 3. Ul-Hassan further asserts that "[h]ad the staff representative been present, the DHO would have had to exonerate Ul-Hassan." Id.

"Prison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply." Wolff, 418 U.S. at 556. Where a prison disciplinary hearing may result in the loss of good time credits, Wolff held that the inmate must receive: (1) "advance

3

written notice of the claimed violation"; (2) an opportunity, when consistent with institutional safety and correctional goals, "to call witnesses and present documentary evidence in his defense"; (3) "a written statement by the factfinders as to the evidence relied on and the reasons for the disciplinary action"; and (4) an opportunity to seek the aid of a fellow inmate or prison staff on complex matters or if the inmate is illiterate". Id. at 563-70.

Courts have not interpreted Wolff to require the presence of a staff representative especially where, as here, the record shows that Ul-Hassan was not illiterate and the issues involved in his disciplinary proceeding were not complex. See, e.g., Green v. Beasely, Civil Case No. 2:18-cv-00060 DPM-JTK, 2019 WL 2062536, *5 (E.D. Ark. Mar. 7, 2019) ("Petitioner cites to no authority for the proposition that he has the constitutional right to a staff representative, much less one of his choosing. A prisoner does not have a general constitutional right to have a staff representative appear on his behalf in a disciplinary proceeding. . . . Instead, due process requires that inmates be provided with the aid of a staff representative only where the inmate is illiterate or the complexity of the issue makes it unlikely that the inmate will be able to collect and present the evidence necessary for an adequate comprehension of the case. . . . Petitioner makes no allegation that he is illiterate, and the

4

issues involved in this case were not complex.") (internal citations and quotation omitted); Medina v. Morton, No. Civ.A 05-4293(RBK), 2006 WL 758302, *5 (D.N.J. Mar. 17, 2006) ("In this case, Medina requested several specific staff representatives, but apparently, these persons declined to represent him. While the DHO should have appointed a staff representative, it would not have been one selected by Medina. Thus, it would appear from the record provided by plaintiff that he then chose the option of proceeding without a staff representative. Further, Medina is not illiterate, nor were the issues involved in his prison disciplinary action so complex that the DHO would have been required to appoint a staff representative if Medina had not requested one. Accordingly, it would appear that a Wolff violation did not occur.").[1]

Nor is the BOP required to provide a staff representative where an inmate waives his right to have one. See, e.g., Green, 2019 WL 2062536 at *5 ("Petitioner was offered the assistance of a staff representative, which he accepted; however, he waived

---

[1] An inmate does not have a right to a staff representative of his or her own choosing. See Potter v. Pearson, Civil Action No. 5:08cv290-DCB-MTP, 2009 WL 6638558, *2 n.3 (S.D. Miss. Sept. 25, 2009) ("Petitioner points to no authority to support the proposition that he has the constitutional right to a choice of staff representative."); Turner v. Miles, No. Civ.A. 103CV539, 2006 WL 318817, *3 (E.D. Tex. Feb. 9, 2006) ("Petitioner has not cited any judicial decision or institutional regulation which would entitle him to have the staff representative of his choice.")

that request when he appeared. . . . Petitioner claims on the date of the hearing, the staff representative could not be located, and the contends the DHO told him a delay in conducting the hearing would only make the sanctions worse for you. . . . Record evidence indicates that Petitioner signed and waived his right to a staff representative on the date of the hearing.") (internal citations and quotation omitted); Howell v. Castaneda, Civil No. 1:12-CV-2341, 2014 WL 5795604, *9 (M.D. Pa. Nov. 6, 2014) ("[W]hen Howell renewed a request for staff assistance at his DHO Hearing, and was offered the option of a continuance of the hearing so a staff representative could be obtained, he waived this right and proceeded without a staff representative. By notifying Howell of his right to staff assistance at his initial UDC appearance, and then offering to continue his final DHO Hearing when Howell belatedly requested staff help, prison officials did all that was required of them. Howell's waiver of staff assistance, therefore, does not present a matter of constitutional dimension warranting federal habeas corpus relief.").

With respect to Ul-Hassan's argument that he did not knowingly and intelligently waive his right to staff representative, the record indicates otherwise. The Discipline Hearing Officer Report indicates that, when "[r]equested staff representative declined or could not appear," Ul-Hassan was

advised of his option to postpone the hearing to obtain another staff representative but, instead, he waived his right to a staff representative. ECF No. 10 at 31. In another place, the Disciplinary Hearing Officer confirmed that:

> Your due process rights were read and reviewed with you by the DHO at the time of the hearing. You stated you understood your rights, had no documentary evidence to present, and requested no witnesses. You further indicated you do not wish to have a staff representative.

Id. at 32. Finally, notwithstanding Ul-Hassan's assertion to the contrary, there is a BP-AO294 signed by him that states "I WAIVE MY STAFF REP". Id. at 34.[2]

---

[2] With respect to Ul-Hassan's argument that the BOP allegedly did not follow its own regulation, the failure to follow a prison regulation does not mean that an inmate's due process rights have been violated. "[P]rison regulations are meant to guide correctional officials, not to confer rights on inmates." Farrakhan-Muhammad v. Oliver, 677 F. App'x 478, 479, 2017 WL 460982, *1 (10th Cir. Feb. 3, 2017) (holding that "minor deviations from Bureau of Prison regulations regarding when Petitioner received the incident report and when the UDC hearing occurred did not violate the Constitution."); see also Cooper v. Jones, No. 10-6003, 372 F. App'x 870, 872 (10th Cir. Apr. 13, 2010) ("The process due here is measured by the Due Process Clause of the United States Constitution, not the internal policies of the prison.").

In any event, the record does not support Ul-Hassan's contention that the BOP did not follow its own regulation. That regulation provides that "[t]he Warden will also appoint a staff representative if it appears you are unable to adequately represent yourself before the DHO, for example, if you are illiterate or have difficulty understanding the charges against you." 28 C.F.R. § 541.8(d)(1). As noted above, there is no evidence that the BOP concluded that plaintiff was unable to represent himself and when plaintiff's requested staff representative was unavailable, he opted to go forward without one.

### III. Conclusion

For the reasons discussed above, the court hereby OVERRULES plaintiff's objections and CONFIRMS and ACCEPTS the factual and legal analysis contained within the Proposed Findings and Recommendation. Accordingly, the court **DENIES** plaintiff's petition for Writ of Habeas Corpus; and **DISMISSES** this matter from the court's docket.

Additionally, the court has considered whether to grant a certificate of appealability. See 28 U.S.C. § 2253(c). A certificate will not be granted unless there is "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The standard is satisfied only upon a showing that reasonable jurists would find that any assessment of the constitutional claims by this court is debatable or wrong and that any dispositive procedural ruling is likewise debatable. Miller-El v. Cockrell, 537 U.S. 322, 336-38 (2003); Slack v. McDaniel, 529 U.S. 473, 484 (2000); Rose v. Lee, 252 F.3d 676, 683-84 (4th Cir. 2001). The court concludes that the governing standard is not satisfied in this instance. Accordingly, the court **DENIES** a certificate of appealability.

The Clerk is further directed to forward a copy of this Memorandum Opinion and Order to counsel of record and to plaintiff pro se.

IT IS SO ORDERED this 16th day of March, 2020.

        ENTER:

        *David A. Faber*
        David A. Faber
        Senior United States District Judge